JAMES W. DICKASON v. GRAFTON SAV. BANK CO. ET AL.

1. ADMISSIBILITY OF EVIDENCE WHEN INSOLVENCY OF CORPORATION NOT JUDICIALLY DETERMINED.

Where, in an action to enforce the secondary liability of stockholders, the petition alleges the recovery of a judgment against the corporation and the return of an execution unsatisfied, together with the insolvency of the corporation, and the plaintiff, in open court, admits that the judgment referred to in his petition is void because of insufficient service, an objection by the stockholders to the introduction of any evidence for lack of any averment of a judicial determination of the insolvency of the corporation, is well taken and should be sustained.

2. AMENDMENT ALLEGING APPOINTMENT OF RECEIVER, PROPER, WHEN.

An amendment to a cross petition, filed by a creditor, alleging the appointment of a receiver of the corporation may be made in such case, although the receiver was appointed subsequent to the filing of the petition.

3. NONEXISTENCE OF CORPORATE CAPACITY OF SAVINGS BANK NO DEFENSE AGAINST CREDITORS, ETC.

Stockholders of an insolvent savings bank cannot successfully defend an action commenced by creditors to enforce unpaid stock subscriptions and their secondary liability, on the ground that the bank was not a corporation by reason of the fact that it commenced business without its capital stock being fully subscribed and one-half of each subscription thereto fully paid up as required by Lan. R. L. 6123 (R. S. 3797). It is sufficient, in such case, that the corporation has a *de facto* existence.

4. FAILURE TO COMPLY WITH LAN. R. L. 6124 (R. S. 3798) NO DEFENSE AGAINST CREDITORS.

Failure to comply with the provisions of Lan. R. L. 6124 (R. S. 3798) requiring the incorporators of a savings bank to give at least three days personal notice or thirty days notice by publication of the time and place of the meeting for the election of directors, cannot be successfully set up as a defense in an action by creditors to enforce the payment of unpaid stock and the secondary liability of the stockholders.

5. MAJORITY OF DIRECTORS CONSTITUTE THE "BOARD" UNDER LAN. R. L. 5188 (R S. 3247).

Three directors of a board of directors of a corporation consisting of five directors, being a majority, constitute the "board" within the meaning of Lan. R. L. 5188 (R. S. 3247), and may transact the business of the corporation.

6. SAVINGS BANK MAY BORROW MONEY, UNDER FAVOR OF LAN. R. L. 5199 (R. S. 3256).

A savings bank incorporated under the laws of Ohio has power to borrow money under favor of Lan. R. L. 5199 (R. S. 3256), which forms a part of the general corporation statutes.

7. CREDITOR NOT CHARGED WITH KNOWLEDGE THAT STOCKHOLDERS HAVE NOT MADE STATUTORY PAYMENT ON SUBSCRIPTIONS.

A creditor who has loaned money to a savings bank is not charged with knowledge that the stockholders of the latter have not paid up their stock as required by Lan. R. L. 6123 (R. S. 3797), which requires that one-half of each subscription shall be fully paid before the bank commences business, by reason of the fact that it was informed that certain stockholders had given notes for their subscriptions, unless it further appears that it knew that said notes represented their entire subscriptions, as it is reasonable to presume, in such case, that one-half of the subscription had been paid in cash, and that the notes referred to were given for the balance.

8. CREDITOR MAY ELECT TO SUE STOCKHOLDERS USURPING CORPORATE POWERS AS SUCH STOCKHOLDERS OR AS INDIVIDUALS.

Persons who carry on a banking business in the name of a corporation, in violation of law, are not protected by the corporate privilege from personal liability for debts contracted in the transaction of such business; and while the creditors may bring their action against the individuals who actively assume the exercise of corporate franchises without lawful authority so to do, yet they may also, at their election, bring an action against the stockholders as such, to enforce their unpaid subscription and secondary liability, relying, in such case, upon the doctrine of estoppel.

APPEAL from Lorain common pleas court.

F. M. Stevens, for plaintiff.

Lester, Wood & Gage, Higley & Maurer, Clayton Chapman, D. J. Nye, J. C. Hill, F. M. Stevens and Johnston & Leonard, for defendants.

## WINCH, J.

July 17, 1902, plaintiff filed his petition against the Grafton Savings Bank Company and various individuals claimed to be stockholders thereof for the purpose of enforcing the secondary liability of said stockholders.

He alleged the recovery of judgment against the corporation, execution thereon and return of the same unsatisfied and that said corporation was wholly insolvent and without property or assets to satisfy said judgment, and had for a long time ceased to do business.

On November 15, 1902, the Savings Deposit Bank Company of Elyria, having become party defendant to the case, filed its amended answer and cross petition, in which it set up an indebtedness to it of the Grafton Savings Bank Company on a promissory note for $1,000 given by the latter company to it on March 10, 1902, and in addition to a request that the stockholders' secondary liability be enforced, also

Dickason v. Bank Co.

prayed that the unpaid stock subscriptions of the defendant stockholders be collected, alleging the amount of their several subscriptions, and that none of them had been paid.

In this amended cross petition is an allegation of the insolvency of the Grafton Company and that it had closed its doors and ceased to do business; but no allegation was made of judgment against the corporation with execution returned unsatisfied; nor that a receiver had been appointed for it, nor any other judicial determination of its insolvency. As a matter of fact, as shown in evidence, a receiver had been duly appointed for the Grafton corporation on August 28, 1902, and he had qualified and taken possession of its assets.

October 19, 1903, said receiver on motion of the plaintiff was made party defendant to the case, and answered, setting up his appointment as such receiver. No objection has ever been taken to this action on his part.

The defendant stockholders having answered, denying that the Grafton Savings Bank Company, was ever incorporated or existed as a corporation, denying any indebtedness on its part and denying that they had ever subscribed for stock or were the owners of any stock in said alleged corporation, the case was tried in the common pleas court, and from its judgment an appeal was taken to this court.

In this court, plaintiff admitting that the judgment alleged in the petition to have been recovered against the insolvent bank was void, for lack of proper service, the defendant stockholders objected to the introduction of any evidence for lack of any averment of such judicial determination of the insolvency of the corporation as rendered the secondary liability of stockholders enforcible against them.

This precise question was determined by the Supreme Court in the case of *Cobb* v. *Scofield*, 66 Ohio St. 680 [65 N. E. Rep. 1127], on authority of *Younglove* v. *Lime Co.* 49 Ohio St. 663 [33 N. E. Rep. 234] and *Bronson* v. *Schneider*, 49 Ohio St. 438 [33 N. E. Rep. 233], the Supreme Court holding such objection well taken.

Thereupon the defendant, The Savings Deposit Bank Company, asked leave to amend its second amended cross petition by inserting an allegation as to the appointment of a receiver and such amendment being objected to on the ground that the receivership was a matter occurring subsequent to the filing of the petition, we overruled the objection, and permitted the amendment, following the ruling of this court in the recent retrial of the Cobb case above referred to, in which ruling we are sustained by the case of *Gibbon* v. *Dougherty*, 10 Ohio St. 365, and 1 Nash, Pl. & Pr. 288, and cases there cited.

Lorain County.

Whether we were right in permitting such amendment or not, we think the objection to the introduction of evidence should be overruled, for the fact of the appointment of a receiver came upon the record and into the case without objection before it was tried in the common pleas court, by the appearance and answer of the receiver himself, and that too, within the time limited for the beginning of such actions as this.

Coming now to the merits of the case, we find that the Grafton Savings Bank Company had duly issued to the incorporators thereof, authority to organize under the savings and loan association laws of the state for the purpose of carrying on the business of such associations. Grafton being a village of less than 2,500 inhabitants, under the provisions of Lan. R. L. 6123 (R. S. 3797), this association was forbidden to commence business, with a subscribed capital of less than $25,000 and until one-half of each subscription therefor was fully paid up.

We find that the association had a subscribed capital of but one-half of $25,000, and that it never had one-half of each subscription fully paid up.

It commenced doing business on March 10, 1902, and the claims of plaintiff and defendant creditors are based upon actual business transactions with said corporation, but defendant stockholders claim that neither the corporation, nor they as stockholders, are bound by such transactions; because the corporation was by law expressly forbidden to do any business—not that the transactions would not be lawful and binding if all of its capital stock had been subscribed and one-half paid up.

With this contention we cannot agree. "When an action is brought to collect a subscription, either directly or indirectly for the benefit of corporate creditors, it is well established that the subscribers cannot defeat such action by the defense that the corporation was not an incorporation, by reason of its not having fully complied with the terms of the statute providing for such an incorporation. Not only is the subscriber estopped, by the act of subscribing, from setting up this defense, but he is bound also by the rule that the existence of a corporation cannot be inquired into except by a direct proceeding in behalf of the state. It is sufficient that the corporation exists *de facto*." 1 Cook, Corporations Sec. 184.

Four of the defendants, Fuller, Hale, Morgan and Mills, participated in the election of directors; the directors, or a majority of them, elected Mills secretary and treasurer, and by resolution authorized and

Dickason v. Bank Co.

directed him "to do all things necessary to be done to carry on the business of this corporation."

The fifth stockholder, Kerr, testifies he knew Mills was to run the business, but he never attended any meetings, either of stockholders or directors.

But it is contended that there was no legally elected board of directors, for Lan. R. L. 6124 (R. S. 3798) provides that the incorporators of a savings and loan association shall give at least three days notice, personally served upon each stockholder, or thirty days notice by publication, of the time and place of the meeting, for the election of directors. This was not done, it being in evidence that at least Kerr had no notice of such meeting, and did not waive such notice. We think however, that this objection is not well taken.

"The fact that directors have been illegally elected cannot be set up as a defense to a suit for the payment of stock." Green's Brice, Ultra Vires 150, note b, and cases cited.

It is next contended that only three of the five directors ever qualified and assumed to act as such; that the business of the corporation must be transacted by the board, the whole board and nothing but the board, and as sustaining this contention we are referred to the case of *Bradford Belting Co.* v. *Gibson*, 68 Ohio St. 442 [67 N. E. Rep. 888].

But that case only holds that an officer of a corporation, in the absence of express authority from the board of directors cannot bind the corporation in a transaction beyond the apparent authority of his position.

On page 449 of the opinion Judge Davis says:

"The corporation may by its regulations, so define the duties of its officers as to make them *alter ego* within the assigned limits."

In this case we think the board attempted to confer this express authority by the resolution referred to, and we use the word, board, designedly, though only three out of five acted, for Lan. R. L. 5188 (R. S. 3247) says:

"A majority of the trustees or directors shall form a board."

It also sufficiently appears that the three directors who acted, took the oath of office, if that is material.

It is further contended as to the claim of the Savings Deposit Bank Company, that it is for a loan, and that Mills, who negotiated the loan, not only had no authority to represent this corporation, but it itself had no authority to borrow money.

We think such an institution as this has the power granted under the general corporation statutes, by Lan. R. L. 5199 (R. S. 3256), to

borrow money, and that Mills had express authority to negotiate the loan by virtue of the resolution referred to, a copy of which he exhibited to the Elyria bank.

It is said that the Elyria bank knew that the Grafton bank had not complied with the law and paid up half of its capital stock, because Mills told it about notes which Kerr and Fuller had given for their stock subscription, but it does not appear that it knew said notes represented their entire stock subscription; it might reasonably have supposed that they had paid up one-half and that the notes were for the balance.

Upon the whole we are of opinion that the Grafton Savings Bank Company was a *de facto* corporation, and that the irregularities in its organization and method of doing business complained of are not such as either the defendant, Fuller or the defendant, Kerr, or any other defendant stockholder can set up as a defense to this action to collect such part of their subscription and secondary stock liability as may be necessary to pay the valid debts incurred in its behalf by its acting board of directors or Mills under authority of the resolution mentioned; in other words that said stockholders are estopped from setting up such defense; in the words of Ashbel Green's American edition of Brice, Ultra Vires (2 ed.) 784:

"When a transaction of the kind now in consideration is completed on the part of the other contracting party, every principle of common sense and equity requires that the corporation should not be permitted to repudiate payment therefor, or the other due completion thereof by itself, on the ground that the transaction, though admitted to be within its possible capacities, is outside its actual powers then called into existence. The very defense discloses fraud; discloses what no court of equity has ever allowed a party to rely on, namely, his own laches or chicanery; discloses that the objector could have given, and can now give himself the capacity which he pretends to be without, and could have done that which, if done, would cut away the ground whereon his objection rests. It is submitted, therefore, that when such a transaction is completed on one side, it is then too late for the corporation to attempt to wriggle out of that stipulated for on its side."

This is strong language. The word "chicanery" is applicable to Mills' conduct alone, but the word "laches" fully characterizes the easy and indifferent manner in which Fuller and Kerr signed stock subscriptions, Fuller also signing minutes of meetings—minutes which he says he never read, and meetings which he says he never attended—and both trusted to the representations of their friends that Mills had a good bus-

Dickason v. Bank Co.

iness, and would run the bank all right. Does anyone for a moment suppose that if the corporation had been a success, made money, declared large dividends, that either Fuller or Kerr would have denied that they were stockholders or denied that there was a corporation? Should they be heard to make such denial when the shoe is on the other foot?

We think these observations answer the suggestion, supported by authority, that those who did not participate in the *de facto* organization should not be held liable. We find that all participated by giving their subscription, and they had no right to consider the enterprise abandoned, as was held under the circumstances of the case of *Bartholomew* v. *Bentley*, 1 Ohio St. 37.

It remains to consider two more Ohio cases with which the conclusion reached in this case is said to be inconsistent.

The case of *Medill* v. *Collier*, 16 Ohio St. 599, was an action by a depositor against the officers and stockholders of a bank, to recover from them as individuals, on a certificate of deposit issued by the corporation, it appearing that said corporation had failed to make a deposit with the state required by law, as a prerequisite to such corporation's doing business. It seems the depositor "had no information as to whether they were doing business as a corporation, or as private bankers. He seems to have trusted them in the latter capacity." Page 611. The court held that persons who carry on a banking business, in the name of a corporation, in violation of law, are not protected by the corporate privileges from personal liability for debts contracted by them in the transaction of such business.

That doubtless is the law yet, and plaintiff might have had it enforced against Mills, and his active associates, if he desired, but he chose to pursue another remedy, and we do not find that the case cited holds that he cannot. Indeed, it expressly states that such proposition is not decided. On page 612, Judge Day says:

"Whether the law would afford any remedy in favor of the plaintiff against the corporation, upon a contract express or implied, made on its part in violation of law, may well be doubted, both upon principle and authority. * * * Clearly the plaintiff would have no remedy against the corporation, unless he could bring to his aid the doctrine of estoppel, where the transaction is forbidden, as may be done where it is merely unauthorized. Although the court *do not deem it necessary to decide this point*, the following authorities tend to show that the plaintiff is remediless against the corporation."

The case of *Trust Co.* v. *Floyd*, 47 Ohio St. 525 [26 N. E. Rep. 110;

12 L. R. A. 346; 21 Am. St. Rep. 846], is like the Medill case, and was an action brought by one who had sold wool to a certain "wool growers exchange" to recover a balance due on account of such sale from the directors of said exchange, a corporation, said directors having been elected and having undertaken to contract as directors before 10 per cent of the capital stock of the corporation had been subscribed. The defendants were held personally liable. The case does not undertake to hold that the plaintiff could not have recovered in an action to assess the stockholders' liability, though the defendants urged that such was the plaintiff's only remedy. The substance of what the court said on this subject is found on page 542:

"If the doctrine of estoppel could be brought to the aid of the plaintiff against it, the defendants are not in a position to require a resort to that remedy, to relieve them from the liability they have incurred."

From an examination of the Ohio cases cited and relied upon by defendants, we conclude that while the creditors of the Grafton bank in this case, might have brought their action against the individuals who actively assumed the exercise of corporate franchises without lawful authority so to do, yet the right to bring an action against the stockholders as such, to enforce their subscription and liability, relying upon the doctrine of estoppel, has never been denied in Ohio.

One ruling upon evidence remains to be mentioned; the objection to the admission in evidence of the letter from Kerr to Stevens, on the ground of its being a privileged communication, is sustained.

Decree may be drawn for plaintiff and cross petitioning creditors as prayed for, finding in favor of the Savings Deposit Bank, depositors who made deposits after March 10, 1902, if any, and other general creditors whose claims were not abandoned at the hearing. The claim based upon affidavit regarding O. E. Durkee is disallowed.

**Marvin, J.,** concurs.

**HENRY, J.,** dissenting.

I dissent from this judgment. Not a single step in the career of this corporation was legally taken after the filing of its articles of incorporation. Its first stockholders' meeting for the election of directors was illegally convened, and both Kerr and Fuller, who are the only subscribers to the capital stock that are before the court, for the purpose of a decree against them, are said to be estopped by their subscription to deny the validity of that meeting, though neither was present. So again, the business transacted and the general power given to Mills, at

the first meeting of the directors, to contract the debts which are here in issue, was unauthorized, for the stockholders had not all paid one-half of their subscription, as required by law as a prerequisite to the beginning of business by corporations of this character.

But Kerr and Fuller are again said to be estopped by their subscription to deny the validity of this action.

The conclusion of the court seems to me to be possible only by piling estoppel upon estoppel in a manner that equity does not permit.

I do not think a *de facto* debt contracted by *de facto* directors of a *de facto* corporation, elected at a *de facto* meeting, can be enforced in a proceeding of this kind.